FREANER JOHNSON ET AL. v. DELOME LAND AND PLANTING CO.

1. WILLS. *Construction.*

   The intention of the testator is the polar star for guidance in interpreting a will, but his intention must be determined from the words of the will. The question is not what testator wished, but what he wrote.

2. SAME. *Words. Ordinary and grammatical meaning.*

   The words of a will must be construed according to their ordinary and grammatical sense, unless some obvious absurdity, some inconsistency with the subject on which the will is to operate, or some repugnance to the intention of the testator, to be collected from the whole will, results from so doing; in which case, the sense of the words may be modified only to the extent of avoiding such consequence.

3. SAME. *Defects in execution.*

   Courts can no more supply defects in the execution of a will or codicil than they can add to or substract from its words.

4. SAME. *Codicil.*

   A defectively executed codicil cannot control the construction of the prior will.

FROM the chancery court of Washington county.
HON. A. H. LONGINO, Chancellor.

The appellants, Freaner Johnson and others, were complain-- ants in the court below; the appellees were defendants there. The facts are sufficiently stated in the opinion of the court.

*Frank Johnston* and *Griffin & Larkin,* for appellants.

1. The actual purpose and contemplation of the testator must govern if it can possibly be ascertained.

2. The entire context of the will, including the codicil, must be considered in ascertaining the testamentary purpose and intention.

3. The codicil, although in legal effect applying to the personal estate, must be considered as a part of the will for the purpose of arriving at the testator's intention.

4. The will and the codicil must be considered and construed as of the time when the codicil was made, for the manifest reason that the codicil refers to and reaffirms the will, and modifies the will, and is blended with the will, forming as it does with the will the entire testamentary scheme.

5. The testator did not intend Harvey Miller to take to the exclusion of his grandchildren by Agnes. And from the codicil it is clear that the testator did not intend Harvey Miller to take to the exclusion of Laura's children, for he so declared in effect beyond any doubt or controversy.

6. In fact, therefore, so far as the testator's intention is concerned, he intended the same provision for Agnes and Laura. Laura was to take the same "share" as Agnes, and under the same regulations and restrictions. That "share" was clearly limited to Laura's life, as Agnes' share was limited to her life. And Laura's share was to go to her children, as Agnes' share, at her death, went to her children. If both Laura and Agnes died without children, then the limitation over to Harvey Miller was to take effect. This is the testamentary scheme as contemplated by the testator. And this is gathered from the codicil construed with the will as one entire testamentary scheme.

7. We must construe the third item of the will, as to the testator's intention, according to the light thrown upon it by the codicil. The meaning of the third item may be doubtful, but in the light of the codicil it is as clear that the testator no more intended Harvey Miller to take to the exclusion of the children of Laura than to the exclusion of the children of Agnes.

8. We are not considering the case of Harvey Miller alive, but of Harvey Miller dead with the survivorship of the grandchildren of the testator, the children of Laura. The precise question purely, as a matter of testamentary intention, is, did the testator intend or contemplate in this contingency (Harvey Miller dead and the children of Laura living) that the grantees of Harvey Miller should take to the exclusion of these grandchildren of the testator? This is the case in the concrete.

9. With the light thrown on the will by the codicil, the third item should be interpreted to carry the idea that the testator intended and contemplated that Harvey Miller should be alive at the death of Agnes, in order to take the contingent remainder in the event of her dying without children. This construction prevents the destruction of the testator's manifest and dominating purpose to prefer his grandchildren to his brother, Harvey Miller.

10. We insist, at this point, that such being the testamentary intention and contemplation at the death of Agnes without children, Harvey Miller being dead, the contingent estate in Harvey Miller failed at his death; and then, at the death of Agnes without children, the estate of the testator descended, according to the statutes of descent, from the testator to the children of Laura. And this result is unquestionably in accordance with the manifest purpose and intention of the testator. This is not enforcing or putting into effect the codicil, as contended by counsel for the appellees, for the codicil is looked to only as an explanatory context, and as witness to the meaning of the will. The will is to be read in the light of the codicil.

11. Looking at the situation of the testator at that time, it

would be unreasonable and unwarrantable to suppose that he intended to prefer the children of Agnes to his brother, Harvey Miller, and at the same time to prefer his brother to the children of Laura.

12. On the face of the will itself, the language used, though equivocal, imports and carries the idea that Harvey Miller, personally, was to take in the event of Agnes' death without children. The testator contemplated Harvey Miller living at the death of Agnes. The words: "I give it, at her death, to my brother, Harvey Miller," carry this idea and import this contemplation of the testator.

13. If this was the testamentary intention or contemplation, then the estate in Harvey Miller was descendible, for his living, was one of the contingencies upon which he took the estate. Such estates are not transmissible, but fail at the death of the contingent remainderman before the event, according to the authority of Fearne, Hilliard, and the other authorities cited below.

14. The question, in the first instance, is not whether the estate in Harvey Miller was transmissible, but whether his being alive at the death of Agnes was the testamentary contemplation; if such was the case, the estate in him failed at his death, and, of course, was not transmissible.

15. We do not argue the question whether a contingent remainder, where the person who is to take is certain and the event merely is contingent, is descendible, for it is not necessary to be considered in the case. The weight of decisions, in number, are that such an estate is descendible. But we call the attention of the court to the fact that the doctrine has been criticized with great force as illogical and unsound. Bingham, in his work, criticizes the distinction between the descendibility of estates contingent on an event and those contingent upon the existence of the person, and Hilliard says: "It will be perceived, however, that the establishment of the doctrine at once destroys the most important distinction between vested and contingent re-

mainders. . . . . It has been taken for granted that if a remainder is transmissible, it is of course vested; if not transmissible, it is of course contingent." 1 Hilliard on Real Prop., 756, note *a.* This author expresses the opinion that "the conflict of authorities is not fully reconciled by the qualification ordinarily annexed to the statement of the rule, viz.: that such remainders descend where the person to take is certain." *Ibid,* p. 756, note *a.*

16. The learning on these abstruse questions is not involved in the present case, which rests upon its own peculiar features, and where the purpose is evident to prefer the grandchildren to Harvey Miller.

17. The rule which imputes the intention of a testator to vest the estate at once in the remote devisee, subject alone to the contingency of the event, and not include his surviving the event, is purely artificial and arbitrary; is never applied except as a *dernier resort,* and, according to all the authorities, invariably yields to the slightest expressions or words that would give a different construction. An explanatory context is invariably controlling. As the testamentary intention appears, a resort to this arbitrary rule is unnecessary in the case now before the court.

We cite the following authorities: *McGee* v. *Holmes,* 63 Miss., 50; *Thompson* v. *Ish,* 17 Am. St. Rep., 552; *Tilden* v. *Green,* 27 Am. St. Rep.; *Van Kleeck* v. *Dutch Church,* 20 Wend., 457; *Kish* v. *Grenier,* 56 N. Y., 220; *Hudson* v. *Gray,* 58 Miss,. 882; *McGehee* v. *McGehee,* 74 Miss., 386; Schouler on Wills, sec. 466; *Murphy* v. *Carlin,* 35 Am. St. Rep., 699; *Hall* v. *Stephens,* 65 Mo., 690; *Hall* v. *Stephens,* 27 Am. Rep., 302; *Noe* v. *Kern,* 93 Mo., 373; *Noe* v. *Kern,* Am. St. Rep., 544; *Suydam* v. *Thayer,* 94 Mo., 49; *Munro* v. *Collins,* 95 Mo., 33; *Small* v. *Fields,* 102 Mo., 104; *Long* v. *Tinnes,* 107 Mo., 512; 2 Greenleaf on Evidence, sec. 671; *Ford* v. *Ford,* 5 Am. St. Rep., 117; Story's Conflict of Laws, sec. 479; *Van Steenwyck* v. *Washburn,* 59 Wis., 51c; *Van Steenwyck* v. *Washburn,* 48 Am.

Rep., 532; 2 Greenl. Ev., sec. 671; *Shadden* v. *Hombre,* 17 Ore.,
14; *Moorehouse* v. *Wainhouse,* 1 Blackstone R., star p. 638;
*Bates* v. *Gillett,* 132 Ill., 287; *Morehouse v. Morehouse,* 18 Mon-
roe (Ky.), 309; *Jacob* v. *Jacob,* 11 Bush (Ky.), 646; 4 Kent's
Com., 201, 202; 2 Jarman on Wills, 4 ed., 329; *Pierce* v. *Hokes,*
23 Pa. St., 231; 20 Am. & Eng. Enc. L., 874, 875, 913;
Preston on Estates, 83; Fearne on Cont. Rem., 364, 371, 372;
*Ib.* 386, 395, 526; 2 Wash. Real Prop., 351; *Sorsby* v. *Vance,*
7 George, 564; *Dean* v. *Nunnally,* 7 George, 358; *Vannerson*
v. *Culbertson,* 10 Smed. & M., 150; *Gilliam* v. *Chancellor,* 43
Miss., 437; *Shadden* v. *Hombre,* 17 Ore., 26, 27; 1 Hilliard
on Real Prop., 753; *Moorehouse* v. *Wainhouse,* 1 Black, 368;
*Bates* v. *Gillett,* 132 Ill., 287-298; Schouler on Wills, sec. 479;
*Roundtree* v. *Roundtree,* 26 S. C., 450; *Westcott* v. *Cody,* 5
Johns. Ch., 334, 343; *Seamans* v. *Butler,* 8 Porter (Ala.), 380-
388; *Collier* v. *Collier,* 3 Ohio St., 367-372; *Colt* v. *Colt,* 32
Conn., 442-446; *Boyle* v. *Parker,* 3 Md. Ch., 42, 44; *Ward*
v. *Saunders,* 2 Swan (Tenn.), 174; *Nealey* v. *Gard,* 20 Ohio St.,
310, 315; 29 Am. & Eng. Enc. L., 340; *Perry* v. *Hunter,* 2 R.
I., 80; *Bond's Appeal,* 31 Conn., 183, 189, 190; *Lassiter* v.
*Wood,* 63 N. C., 360; *Gannuway* v. *Tarpley,* 1 Coldw., 572; 1
Jarman on Wills, star p. 363, 364; Wigram on Wills, 2d ed.,
51, 75; *Hudson* v. *Gray,* 58 Miss., 891; *Stewart* v. *Matheny,*
66 Miss., 22; *Jones* v. *Merrill,* 69 Miss., 747.

·   *Bowers, Chaffe & McDonald,* and *Yerger & Percy,* for appel-
lees.

We will not worry the court with a discussion as to whether
the interest of Harvey Miller, arising under the will of his
brother was an executory devise or became a contingent re-
mainder; so far as the purposes of this case are concerned, we
deem it immaterial, because both were assignable and vendible,
and both descended to the heirs or devisees of the beneficiary.

There seems to have been very little doubt upon this sub-
ject, even in the similar cases in England.   By an unbroken

current of authorities, it has been entertained in that country and in this, that such estates arising under terms almost identical with those used by John C. Miller, passed to the assignee, devisee, or heir of the remainderman, and did not lapse at his death before the happening of the condition.

Beginning with the case of *Weale* v. *Lower,* Bollexfen Reps., 54, a case of a pure contingent remainder, up to the latest adjudications in this country, we have found practically no break in the current of decisions. *Sheriff* v. *Worthram,* Gro. Jac., or 2d Croke, 509; *Goodnight* v. *Searle,* 2 Wilson, K. B., 29; *Goodtitle* v. *Wood,* Willes' Reps., 211; Cases temp. Talbot, 117; *Jones* v. *Roe,* 3d T. R., or Durnford & East, 42; *King* v. *Withers,* 2 M. & S., 165; *Purefoy* v. *Rogers,* 2 Wm. Saunders, 360, 388; 4 Kent, 511; *Den* v. *Manners,* Spencer's N. J. Reps., 142; *Wright* v. *Wright,* 1 Vesey, Sr., 409; 2 Washburn on Real Property, 367, sec. 4; 2 Preston on Conveyances, 269, 270; 2 Washburn on Real Property, 291, 292; Wilson on Uses, 156; Fearne on Contingent Remainders, 266; *Scawen* v. *Blount,* 7 Vesey, Jr., 399; *Perry* v. *Phelps,* 17 Vesey; *Lewis* v. *Kemp,* 1 Iredell, N. C., 145; 2 Cruise on Real Property, 331; *Hall* · v. *Robinson,* 3 Jones, N. C., Eq.; *Kean* v. *Heffecker,* 2 Harrington (Del.), 112; *Roe* v. *Jones,* 1 H. Blackstone, 30; 1 Fearne on Remainders, 534, 536, 540; 2 *Ib.,* 530; 4 Kent, 284; *Barnitz* v. *Casey,* 7 Cranch, 465.

These authorities might be multiplied without number, but as we understand the appellant to admit practically that contingent estates are assignable or devisable where the person to take is certain, and outlives the testator, but dies before the happening of the contingency, we will not cumber the record with further citations. We have referred to the above cases because in each of them the language is almost identical with that used by John C. Miller, and with a view of demonstrating that in none of these cases was it supposed that the existence of the original remainderman at the time of the happening of the condition entered into or formed a part of the testator's intent.

Opposing counsel admit generally the assignability of said estate, but deny the application to the case at bar, because, as contended by them, the testator did not intend the remainder to go to Harvey Miller, or his heirs, unless he was alive at the time of the death of Agnes. In order to sustain this position they have resorted to a labored argument upon the construction of the will, and have sought to construe away the plain, unambiguous words of the instrument. To invoke rules of construction, or seek to ascertain the testator's intent in a cause where, like the one at bar, the language is technical, clear, plain, and unambiguous, is to light a candle while the sun is shining.

Rules of construction, as we understand the law, are invoked and used only where there appears in the language of the instrument some uncertainty as to the testator's intent; there is no such uncertainty or ambiguity in this case, and the court cannot escape the force of the language used.

The intention must be discovered from the words of the will itself and not from extrinsic circumstances, and the court must proceed upon known principles and established rules, not on loose conjecture or interpretation, or by considering what a man may be imagined to do in the testator's circumstances. *Stephenson* v. *Heathcote,* 1 Eden, 38, 43.

"It is always the safest mode of construction to adhere to the words of the instrument, without considering either circumstances arising *aliunde* or calculations that may be made as to the amount of the property, or the consequence which may flow from any particular construction." *Currie* v. *Murphy,* 35 Miss., 473--487.

In *Elliott* v. *Topp,* 63 Miss., 138, 142, Judge Campbell, speaking of the intention of the testator, said: "Could he have foreseen what would occur he would not have done this, we are sure, but the duty of the courts is to execute a will as made, and not to make one for the testator. What he plainly said must be done, should be done, although it may be seen that he

would not have said it if he had known the conditions in which his direction would have to be applied and executed.

"The intention of a testator is to be gathered from the will itself, taking in aid the general rules of construction which have been settled by decisions. In construing wills the courts are bound by the words they contain. Of the words used they are to declare the plain meaning; if they should adopt a different meaning they would become the makers instead of the expounders of the will. *Kean* v. *Heffecker,* 2 Harrington, 115; 2 Vesey & Beames, 271; *Stephenson* v. *Heathcote,* 1 Eden, 38.

"We may privately think that this or that was the intention of the testator, but we are not at liberty, by private opinion, to establish a construction which is against the plain words of a will, or to give the words a meaning contrary to that which has been assigned to them by legal adjudications." *Kean* v. *Heffecker, supra;* 1 Yates, 439.

In seeking for the intention, words are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another can be collected. Good faith and common sense alike sanction the rule. When there is no ambiguity in the words there is no room for an interpretation. *Vannerson* v. *Culbertson,* 10 Smed. & M., 150; 2 Jarman on Wills, 738.

"Where a testator uses technical words, or words which have received a settled legal sense, courts are bound to say *prima facie* that he understood the meaning of these, and others are not to be substituted unless by express words from the context, or by an unavoidable and necessary construction it plainly appears that it was intended that the words should be construed otherwise, or unless it becomes necessary to do so in order to make sense of the will. *Kean* v. *Heffecker,* 2 Harrington (Del.), 103–116, citing 1 Yeates, 343; 2 Wend., 279–293.

"If words be used in a will which have received a settled construction, an established definite meaning by express adjudication, such construction should, for the sake of uniformity in the disposition of real estate, and for the security and repose

of society, be adhered to by courts of justice unless it violates the plain, undoubted meaning of the instrument." *Kean* v. *Heffecker, supra,* 116, citing *Lambert* v. *Paine,* 3 Cranch, 134; *Doe* v. *Wright,* 8 T. R., 66; *Ide* v. *Ide,* 5 Mass., 501; 4 Kent, 539.

Lord Eldon, in the great case of *Lady Lincoln* v. *Pelham,* 10 Vesey, 166, says with great propriety: "If there is a settled construction founded on cases decided, applying to the terms used, it is better to adhere to that settled construction, though I may entertain some doubt whether it is according to the intention, rather than upon some grounds on which I cannot rest on every view of the case, to come to a decision having a tendency to shake that which forms a rule of construction, and which may, in practice, have been acted on in many cases."

Commenting on this decision, the court in *Kean* v. *Heffecker,* says: "With conclusion of Lord Eldon we accord, and if there be a well-settled legal construction of the words and language which have been used by the testator in his will, we hold it better to adopt that construction, although we have some doubt if such be in strict conformity with the intention or mind of the testator when he executed the will." 4 Harrington (Del.), 116.

But, say counsel, the codicil while void, is valuable as indicating the intention of J. C. Miller. Assuming, for the sake of argument, that this codicil may be used for that purpose, what light does it shed upon the question? It is manifestly valueless to interpret the intention of J. C. Miller, for the reason that it deals with a state of affairs arising after the execution of the original will, and that was not contemplated by him when he executed that paper.

Inasmuch as the will is the only valid disposition of the real estate, the intent to be gathered is that existing at the time of the execution thereof. The inquiry, if, indeed, we are permitted to look beyond the instrument itself, is, what distribution did J. C. Miller intend when he executed his original will? Clearly

his purpose was to give the property to his daughter Agnes for her life, the remainder to her children, if any, and in default of issue to his brother, Harvey Miller, and his heirs. It was the most natural and reasonable disposition of his property. At the time he had but one child; it is apparent from his will that he did not contemplate the possibility of the birth of another. After the death of his daughter his brother, Harvey, for whom he seems to have had a tender regard and affection, was his heir at law, and it is quite plain that he intended Harvey and his heirs should, in default of issue to Agnes, take the estate.

The court will notice the significant fact that, in providing for Laura, the testator stipulated that in case of her death without issue, her sister, Agnes, should take the remainder, but wholly failed to provide any cross remainder from Agnes to Laura, or her children, in case Agnes should die without issue. In other words, while the testator, in the codicil, provides that Agnes take after Laura, there is no provision that Laura should take after Agnes.

Applying the legal principles above stated to this case, we have a will, perfectly plain in terms, without the slightest ambiguity, couched in language that for nearly three hundred years, by an unbroken current of authorities, has received a fixed and settled interpretation, and in the face of this plain, unambiguous testament, and this long series of judicial interpretation, we are met with an attempt to construe away its provisions, and to make for the testator a will, and impute to him an intention, based upon a condition of things and a state of his family that did not exist at the time that he executed the testament. Surely this should not be permitted.

Argued orally by *Frank Johnston,* for appellants, and by *Leroy Perry* and *E. J. Bowers,* for appellees.

TERRAL. J., delivered the opinion of the court.

On September 14, 1836, John C. Miller, owning considerable real and personal estate in the State of Kentucky, where he

resided, and also a large real estate in Washington county, this state, of which he afterwards died seized, and which is the subject of controversy in this suit, made his holographic will, the parts of which material to this controversy are as follows: "First. It is my wish that all my just debts be paid. Second. I give to my wife $20,000, etc. Third. I give the remainder of my estate to my daughter, Agnes F. Miller, during her life, and, after her death, to her children. Should she, however, die without child or children, I give at her death to my brother, Harvey Miller. Should Agnes die leaving one child, it is to inherit as if there were children."

On the 2d day of May, 1840, said John C. Miller executed a codicil to said will, attested by two witnesses only, which was, at said date, insufficient to pass real estate in Mississippi, the material parts of which are as follows:

"I, John C. Miller, do make this a codicil to a will made and written with my own hand prior to the birth of my daughter, Laura—that is to say, I give to my daughter, Laura, the one-fourth part of the net proceeds or profits of my estate after paying my debts, until she arrives at the age of sixteen years, and after that, to hold an equal portion of my estate, real and personal, with my daughter, Agnes, and to hold under the same restrictions and regulations, and in every way as prescribed for Agnes in the will here alluded to. In the event of the death of my daughter, Laura, without a child living, then my daughter, Agnes, is to inherit all the estate left by me to Laura, as prescribed in the foregoing writing, or, in other words, Agnes is to inherit as prescribed in the original will."

John C. Miller died on the 5th day of May, 1840; Agnes died on the 17th of September, 1893, without having had any children.

The appellees claim the real estate herein involved by mesne conveyances from Harvey Miller, devisee in the third clause of John C. Miller's will, who, in 1860, conveyed his contingent interest in the premises to Warren, and who died in the life-

time of Agnes. The appellants claim the premises as the heirs at law of John C. Miller, on the ground or contention that the devise to Harvey Miller was personal only, or that the devise was upon the contingency of his surviving Agnes.

The devise by John C. Miller of his estate to Harvey Miller, after the death of his daughter, Agnes, without children, is not, in our opinion, made upon the contingency of his surviving Agnes, for, if such was his intention, he has not clearly expressed such purpose by the words he has employed, and as the testator has not, by plain words, expressed such intention, we cannot, by construction, import into his will such words as would clearly indicate such intent, for this would be to make a will for him, and not to construe one made by him. The intention of the testator is the polar star for inquiry in the interpretation of his will, but such intention must be collected from the words which he has employed; the question is not what he wished, but what he has said. Broom's Leg. Max., *555.

Lord Wansleydale, in *Sluigsby* v. *Granizer,* 7 H. L. Cas., 284, said: "Our duty is to ascertain not what the testator may be supposed to have intended, but the meaning of the words he has used, and these we must construe according to their ordinary and grammatical sense, unless some obvious absurdity, or some repugnance or inconsistency with the declared intentions of the writer, to be collected from the whole instrument, followed from it, or, it may be added, some inconsistency with the subject on which the will is meant to operate, and that the sense might be modified so as to avoid those consequences, but no further."

At the making and consummation of this will the statute of this state provided: "Every estate in lands devised to any person, although other words heretofore necessary to transfer an estate of inheritance be not added, shall be deemed a fee simple, if a less estate be not limited by express words, or do not appear to have been devised," and, under this statute, the

devise to Harvey Miller must be construed to read as a devise to Harvey Miller and his heirs in fee simple, and if such had been the language of the devise, it would be clear that it was not on the contingency of Harvey Miller surviving Agnes.

If the codicil of the will of John C. Miller had been attested by three witnesses, so as to pass real estate, he would have devised a title to his daughter, Laura, prior to that of his brother, Harvey Miller; but the intention of the testator failed of effect because the codicil was not attested by three witnesses. Courts, however, can no more supply defects in the execution of a will or codicil than they can add to or diminish the words of a will.

*Affirmed.*